UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA
ex rel. STEPHANIE JOHNSON,

  Plaintiffs,

vs.              Case No. 8:13-cv-02017-T-27EAJ

E-MED SOURCE OF FLORIDA, INC.,
d/b/a ANGELS CARE HOME HEALTH,
and ASHIT VIJAPURA, M.D.,

  Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Ashit Vijapura, M.D.'s Motion to Dismiss Amended False Claims Act Complaint (Dkt. 33) and E-Med Source of Florida, Inc.'s Motion to Dismiss Amended False Claims Act Complaint (Dkt. 36). Relator Stephanie Johnson has responded in opposition to both motions (Dkts. 37, 41). Defendants have also moved to stay discovery (Dkts. 46, 47), which Relator does not oppose (Dkts. 48, 49). Upon consideration, the motions are **GRANTED**.

### BACKGROUND

Relator Stephanie Johnson worked as a medical biller for Defendant E-Med Source of Florida, Inc., d/b/a Angels Care Home Health ("Angels Care") from January 22, 2013 until May 22, 2013. (Dkt. 20 ¶¶ 6-7). Johnson contends that Angels Care violated the False Claims Act, 31 U.S.C. § 3729 *et seq.*, in four different ways. First, she alleges that Angels Care billed Medicare for home health services for patients who were not actually homebound, in violation of Medicare regulations. (*Id.* ¶¶ 13-14). As support for this legal conclusion, she alleges that many of Angels Care's patients,

1

particularly psychiatric patients of Defendant Ashit Vijapura, M.D., did not have a home address and were treated in locations other than their homes. (*Id.*)

Johnson's second theory is that Angels Care violated Medicare reimbursement regulations which require that plans of care are signed by physicians. (*Id.* ¶¶ 16-18). Angels Care executives told Johnson that 300-400 patients had plans of care which lacked physician signatures. (*Id.*) She alleges Angels Care submitted final claims to Medicare for these patients despite the lack of physician signatures. (*Id.*)

Johnson next alleges that Angels Care employees were frequently unable to locate patients for scheduled visits. (*Id.* ¶¶ 19). After missed visits, nurses "made up and backdated" notes of visits in Johnson's presence, she alleges. (*Id.*) Angels Care then submitted claims to Medicare based on these missed visits. (*Id.*)

Her final theory, and the only one which is also pled against Dr. Vijapura as a Defendant, centers on a referral arrangement between Dr. Vijapura and Angels Care. Johnson alleges that Dr. Vijapura referred about 80% of Angels Care's psychiatric patients. (*Id.* ¶ 20). Angels Care paid Dr. Vijapura $2500 per month for "specialty services," but Johnson alleges she "saw no evidence" Dr. Vijapura actually performed the services. (*Id.* ¶ 21). She also alleges that Angels Care purchased an unspecified number of $500 tickets to a charity event at Dr. Vijapura's request. (*Id.* ¶ 22).

Johnson originally filed this action on August 2, 2013. (Dkt. 1). In November 2014, the government declined to intervene, and the complaint was unsealed. (Dkts. 11, 12). Johnson later filed an amended complaint and served the Defendants, who have moved to dismiss the complaint. (Dkts. 20, 33, 36).

## STANDARD

To state a claim under the False Claims Act, a relator must satisfy two pleading standards. First, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule does not require detailed factual allegations, but it demands more than an unadorned, conclusory accusation of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although it is axiomatic that the Court must accept as true all of the allegations contained in the complaint, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations." *Id.* at 679.

A False Claims Act complaint must also "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002). The particularity requirement of Rule 9(b) is satisfied if the complaint alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (citing *Clausen*, 290 F.3d at 1310). Generally, in order to plead the submission of a false claim with particularity, "a relator must identify the particular document and statement alleged to be false, who made or used it, when the statement was made, how the statement was false, and what the defendants obtained as a result." *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1225 (11th

Cir. 2012).

## DISCUSSION

The "central question" in a claim brought under the False Claims Act is "whether the defendant ever presented a 'false or fraudulent claim' to the government." *Hopper*, 588 F.3d at 1326 (quoting *Clausen*, 290 F.3d at 1311). A defendant violates the False Claims Act only by "knowingly ask[ing] the Government to pay amounts it does not owe," and not by "merely disregard[ing] Government regulations or [following] improper internal policies." *Clausen*, 290 F.3d at 1311. The requirement of alleging the "presentment" of a false claim cannot be overcome by detailing other improper activity. *Id.* Rule 9(b) does not permit a relator "merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Id.* Rule 9(b) requires "some indicia of reliability . . . in the complaint to support the allegation of *an actual false claim* for payment being made to the Government." *Id.* (emphasis original).

### *Home Health Services for Non-Homebound Patients*

Johnson's first theory is that Angels Care violated the False Claims Act by billing Medicare for home health services for patients who were not actually homebound. These allegations fail to state a claim for two reasons. First, Johnson admits she lacks an actual false claim presented to the government for payment, the "*sine qua non*" of a False Claims Act case. *Clausen*, 290 F.3d at 1311. Her previous position as a medical biller for Angels Care does not relieve her of this requirement, as drawing "inferences about the submission of fraudulent claims would 'strip[] all meaning from Rule 9(b)'s requirements of specificity.'" *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir.

2005) (quoting *Clausen*, 290 F.3d at 1312 n.21).

Second, the facts alleged by Johnson are insufficient to infer that Medicare policy for homebound patients was violated. Medicare regulations state that an individual is considered to be "homebound" if the individual (1) needs supportive devices, special transportation, or the assistance of another person to leave his or her home, or leaving the home is "medically contraindicated," (2) the patient is "normal[ly] [un]able to leave home," and (3) "[l]eaving home must require a considerable and taxing effort." Medicare Policy Manual Ch. 7 § 30.1.1, available at https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/bp102c07.pdf. The regulations specifically state that any travel or absence from the home to "receive health care treatment," including regular absences for "therapeutic, psychosocial, or medical treatment in an adult day-care program . . . shall not disqualify an individual from being considered [homebound]." *Id.* Johnson alleges that Angels Care billed Medicare for home health services for patients who lacked home addresses, according to their hospital discharge papers, and many of the patients sought psychiatric treatment in the community. These allegations are not sufficient to establish that Angels Care violated Medicare policies, as they are consistent with patients meeting the definition of homebound and receiving health care treatment in the community. *See U.S. ex rel. Keeler v. Eisai, Inc.*, 568 Fed. App'x 783, 794 (11th Cir. 2014) (to state a False Claims Act claim, Relator must allege that the claim was false and the falsity was known to Defendant).

### *Plans of Care Lacking Physician Signatures*

Johnson's second theory, that Angels Care billed Medicare for home health services for patients who did not have plans of care signed by physicians, also fails to state a claim. The gravamen of Johnson's allegations is that Angels Care "backdated" plans of care (Dkt. 20 ¶ 18), but

it is not clear that was a violation of Medicare rules. Medicare claims regulations require that a Home Health Agency submit claims "after all services are provided for the episode and the physician has signed the plan of care and any subsequent verbal order. Signed orders are required every time a claim is submitted. . . ." Medicare Claims Processing Manual § 10.1.10.4, available at https://www.cms.gov/Regulations-and-Guidance/Guidance/ Manuals/Downloads/clm104c10.pdf. *See* 42 C.F.R. § 409.43(c)(3) ("The plan of care must be signed and dated . . . [b]efore the claim for each episode of services is submitted for the final percentage prospective payment."). Johnson alleges that Angels Care lacked physician signatures on 300-400 plans of care, but this factual allegation, standing alone, is insufficient to support her conclusion that the final claims *actually submitted to Medicare* were fraudulent because they lacked physician signatures. *See Hopper*, 588 F.3d at 1328 ("Improper practices standing alone are insufficient to state a claim under [the False Claims Act] absent allegations that a specific fraudulent claim was in fact submitted to the government.").

### *Backdated Treatment Notes*

Johnson next alleges that nurses at Angels Care "backdated" treatment notes when they were unable to locate patients and "missed visits." (Dkt. 20 ¶ 19). This allegation does not comply with the requirements of the False Claims Act, because Johnson fails to include an actual false claim presented to the government for payment. "Without the *presentment* of such a claim, while the practices of an entity that provides services to the Government may be unwise or improper, there is simply no actionable damage to the public fisc as required under the False Claims Act." *Clausen*, 290 F.3d at 1311 (emphasis original).

Johnson also fails to allege the details of this scheme with the particularity required by Rule

6

9(b). None of the nurses who allegedly backdated treatment notes are named, nor are the specific times and dates that nurses allegedly missed visits. Johnson fails to properly allege a nexus between "missed visit[s]" and nurses backdating notes. The conclusory statement that backdating was the "result" of missed visits does not satisfy the requirements of pleading a fraudulent scheme with particularity. (*See* Dkt. 20 ¶ 19). *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1055 (11th Cir. 2015) (affirming partial dismissal of False Claims Act complaint because of failure to "plead with particularity how [the] scheme led" to false certification to government).

### *Kickback Referral Scheme*

Johnson's final claim, the only one which includes Dr. Vijapura, is that there was a kickback scheme between him and Angels Care. Johnson alleges that Angels Care paid Dr. Vijapura $2500 per month for being a "physician advisor for specialty services," but she "saw no evidence" those services were actually performed. (Dkt. 20 ¶ 21). Angels Care purchased $500 tickets for a charity event for several years at Dr. Vijapura's request, Johnson also alleges. (*Id.*)

These allegations are insufficient to satisfy the requirements of Rule 8 or Rule 9(b). The complaint lacks an actual false claim presented to the government for payment, as required by binding precedent. *Clausen*, 290 F.3d at 1311. Moreover, the allegations do not adequately state how the scheme worked. Johnson fails to allege sufficient facts to show that the purchase of charity tickets by Angels Care was a kickback to Dr. Vijapura. Nor does Johnson explain the basis for her allegation that she "saw no evidence" that Dr. Vijapura performed the billed specialty services. Johnson simply alleges that she was a medical biller for Angels Care, and she does not allege that position provided her with the opportunity to travel to Dr. Vijapura's offices in Tampa, Plant City, and Brooksville, or to Shady Palms Retirement Home, where Exhibit 13 to the Amended Complaint

states that the services were performed. Therefore, Johnson's allegation that she "saw no evidence" that Dr. Vijapura provided the services is simply "an unadorned, conclusory accusation of harm" that does not suffice under Rule 8 or Rule 9(b).[1] *Iqbal*, 556 U.S. at 678.

## CONCLUSION

Ashit Vijapura, M.D.'s Motion to Dismiss Amended False Claims Act Complaint (Dkt. 33) and E-Med Source of Florida, Inc.'s Motion to Dismiss Amended False Claims Act Complaint (Dkt. 36) are **GRANTED**. The complaint is **DISMISSED** *without prejudice*. Relator is **GRANTED** fourteen (14) days leave to amend her complaint.

Ashit Vijapura, M.D.'s Motion to Stay Discovery (Dkt. 46) and E-Med Source of Florida, Inc.'s Motion to Stay Discovery, etc. (Dkt. 47) are **GRANTED**. Discovery is **STAYED** until Defendants answer a complaint.

**DONE AND ORDERED** this 2nd day of November, 2015.

JAMES D. WHITTEMORE
**United States District Judge**

Copies to: Counsel of Record

---

[1] Both Defendants argue Johnson has not shown that they violated the Anti-Kickback Statute, 42 U.S.C. § 1320a–7b(b)(2)(A), or the Stark Amendment, 42 U.S.C. § 1395nn, which prohibit certain referral arrangements between physicians and other health care providers. Johnson cites neither statute in her complaint or response to the motions to dismiss. If she intends to rely on violations of the AKS or Stark Amendment as violations of the False Claims Act, she must properly plead that theory.

8